**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KSENIYA GJEKA | : | |
| A/K/A KSENIYA MELNYCHENKO, | : | |
| Plaintiff | : | Civil Action No. 12-cv-4548 |
| | : | |
| v. | : | |
| | : | |
| DELAWARE COUNTY COMMUNITY | : | |
| COLLEGE | : | |
| and | : | |
| JOHN PRESTON, | : | |
| Defendants. | : | |

**DEFENDANT DELAWARE COUNTY COMMUNITY COLLEGE'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, Delaware County Community College (the "College" or "DCCC"), through

its counsel, the Levin Legal Group, P.C., pursuant to Federal Rule of Civil Procedure 12(b)(6),

hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Second

Amended Complaint.

**FACTUAL BACKGROUND**

The following facts are pleaded in the Second Amended Complaint (the "Complaint").

Plaintiff began her studies at DCCC in January 2008.  Compl. ¶ 6.  From June 2008 through

August 2008, Plaintiff was enrolled in the Test of English as a Foreign Language ("TOEFL")[1]

preparatory course offered by the College. Compl. ¶ 8.  John Preston ("Preston") was the

assigned instructor for the preparatory course.  *Id.*  Plaintiff alleges that Preston "flagrantly

flirted with Plaintiff in class."  Compl. ¶ 10.  The Plaintiff further alleges that beginning on

---

[1]     TOEFL is a test of an individual's ability to use and understand English in an academic setting that is designed and administered by the Educational Testing Service.

August 7, 2008, and continuing through July 4, 2011,[2] Preston sent "unsolicited, inappropriate, flirtatious and harassing messages" to her through her personal e-mail account and through the social media site, Facebook. (Compl. ¶ 15).

The Plaintiff's allegations about Preston's alleged conduct toward her can be broken down into three categories: (1) alleged actions while he was her instructor; (2) alleged actions to have occurred after he ceased to be her instructor but while he was still employed by DCCC; and (3) alleged actions after he was no longer employed at DCCC. Each category of allegations will be addressed seriatim.

### 1. Alleged Actions While Preston Was Plaintiff's Instructor

The only allegations Plaintiff makes that occurred during the TOEFL course from June 2008 until August 2008 were that Preston flirted with her, provided her with his *personal* e-mail address and telephone number, and "handwrote a flagrant solicitation in Plaintiff's essay test/classwork." (Compl. ¶¶ 10-11). No further description of these actions is provided. There are no other allegations during this period of time that Preston harassed or discriminated against the Plaintiff, nor are there any e-mails attached to the Complaint that would support such allegations. Importantly, the Plaintiff does not allege that she spoke to anyone at DCCC about the allegations during the time she was enrolled in the TOEFL course.

### 2. Alleged Actions After Preston Ceased Being Plaintiff's Instructor, But While He Was Still Employed By DCCC

Plaintiff alleges that Preston continued to contact her both by e-mail and through Facebook after she completed his course. However, the Complaint does not provide details of

---

[2]     While the Complaint alleges that Preston began sending messages on August 7, 2008 – after the preparatory class taught by Preston had ended – the first e-mail message detailed in the Complaint is dated August 1, 2009, while the first Facebook message identified was sent on August 7, 2009. *See* Compl., Exhs. A, B.

any message from Preston to the Plaintiff until August 1, 2009 – almost a year after Plaintiff had completed Preston's TOEFL course – when Preston allegedly sent her an email regarding a party he had attended.[3] The Plaintiff does not allege that Preston sent her an inappropriate e-mail until August 6, 2009, when he allegedly sent a message stating: "We should have lunch or dinner – I am not cheap like your ex-boyfriend; I will take you to a nice place. We both have some free time coming up."[4] Compl. ¶ 13. Despite the allegations that these contacts were unwelcome, the Plaintiff sent Preston an e-mail the next day – August 7, 2009 – informing him that he could now find her on Facebook and add her as a friend. Exh. A.[5]

The Plaintiff also alleges inappropriate and unwelcome contact by Preston via Facebook on August 8, 2009. (Compl. ¶¶ 16-17). These unwelcome contacts were continuously responded to by the Plaintiff, and do not include any statements or directives to Preston to cease communications with her. Exh. A. In fact, after Preston comments about photographs of the Plaintiff that she allegedly found offensive, she responds "Thank you for compliment." Exh. B, p. 3.

While Preston continued to contact the Plaintiff between August 8, 2009 and August 14, 2009, the emails themselves show nothing more than communications between two adults, with

---

[3]     The Plaintiff alleges that this e-mail "admits" that a female DCCC student slept over at Preston's house. However, there is no support in the e-mail message for this deduction. The relevant portion of the e-mail states:

> "It is too bad you didn't come to the party. The same girl who I booted out the other day was there and I let her stay this time because it was her last night in the US before returning to Germany. She was the cousin of the girl Sergi who sits or sat in the back."

Compl., ¶ 12. This message does not state that the party occurred at Preston's home, nor that the girl was a DCCC student. (Indeed, it notes that she was a cousin of a student.) Finally, there is no reference to the girl sleeping over at Preston's home, but merely that Preston allowed the girl to remain at the party despite having apparently not allowing her to remain in class one another date.

[4]     The Complaint describes this message inviting the Plaintiff out to eat as "salacious and lewd," but does not explain the reason for such characterizations.

[5]     All alphabetic exhibits referenced are those attached to the Complaint.

the discussions about DCCC, other students and instructors, and both individual's vacation plans. Exh. A. Nowhere in the e-mail correspondence does the Plaintiff either ask Preston to stop communicating with her or voice her displeasure.[6] Exh. A. Meanwhile, not only was Preston not Plaintiff's instructor during this time period, he was not serving in any type of guidance position through DCCC. Further, Plaintiff does not allege that she informed anyone at DCCC about these communications during this time period, and she does not include any allegations that anyone at DCCC was aware of the private electronic conversations that were conducted on non-College related forums and technology.

The Plaintiff's lone allegation in the whole Complaint that DCCC had knowledge of any misconduct by Preston is that Preston allegedly admitted that students had complained about him. Compl., ¶¶ 34-35. However, a review of the e-mails cited to support this allegation shows that the students' complaints related to Preston's classroom management, including not letting the students talk to each other during class. *Id.* There are no allegations that any of the complaints were related in any way to any type of sexual harassment or discrimination, nor that any of the complaints were made by, or referenced, the Plaintiff.

The Plaintiff further alleges that inappropriate communications continued on August 23, 2009 and November 30, 2009. Compl. ¶¶ 40-41. The Plaintiff does not allege that Preston was serving as her instructor during these periods of time, nor is there any indication that Plaintiff told anyone at DCCC about these allegedly unwelcome communications.

---

[6]      Indeed, in one e-mail to Preston on August 15, 2009, the Plaintiff wrote, "you cheered me up:)) I am smiling:) lol thanks" Exh. A.

### 3. Alleged Actions After Preston Was Terminated By The College For Unrelated Reasons

On March 22, 2010, Preston's employment with DCCC was terminated.[7]  There are no averments in the Complaint that Preston's employment at DCCC was terminated as a result of anything related to the Plaintiff or to her averments.  Nor are there any averments that indicate that DCCC was aware of any of the private communications between the Plaintiff and Preston at the time of his termination.  On July 13, 2010, Preston informed Plaintiff of the fact that he was no longer working for DCCC in an e-mail.  Exh. A, final page.

There are no averred contacts between Gjeka and Preston between July 13, 2010 and July 4, 2011.  For reasons unknown to DCCC, on July 4, 2011, Preston allegedly re-engaged in contact with the Plaintiff through their personal e-mail accounts.  Compl. ¶¶ 45-46.  These lewd communications occurred 16 months after Preston had been terminated by DCCC, and was through personal e-mail.  The Plaintiff does not allege that anyone at the College was aware of this e-mail or any prior communication between the Plaintiff and Preston.

On or about August 1, 2011, the Plaintiff filed a claim with the Pennsylvania Human Relations Commission ("PHRC") for sexual harassment/sexual discrimination under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").[8]  This claim was subsequently *voluntarily* withdrawn by the Plaintiff on May 15, 2012.  A true and correct copy of the withdrawal is attached hereto as Exhibit 1.  Following the voluntary dismissal of the PHRC

---

[7]     The date of Preston's termination appeared in the First Amended Complaint (¶ 3), but does not appear in the Second Amended Complaint, which states only that certain events occurring in 2011 occurred "subsequent to his termination of employment with Defendant, DCCC . . . ."  Compl., ¶¶ 48-49.

[8]     The information regarding Plaintiff's filing with the PHRC, while outside the facts in the Complaint, is essential to the operative facts of this case, and Plaintiff's burden of establishing exhaustion of administrative remedies under the PHRA.  Accordingly, DCCC requests that the Court not exclude this information, but rather, if necessary, convert the instant motion to a Motion for Summary Judgment under Fed. R. Civ. P. 56, pursuant to Fed. R. Civ. P. 12(d).

Complaint, the Plaintiff instituted suit against DCCC and Preston in the Delaware County Court of Common Pleas on July 10, 2012. The First Amended Complaint was filed in the same jurisdiction on July 24, 2012, prior to DCCC's removal to this jurisdiction. Following DCCC's filing of a motion to dismiss with this Court and a subsequent hearing, the Plaintiff filed the Second Amended Complaint on December 4, 2012.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the court "accepts well-pleaded allegations and reasonable inferences as true, and construes the complaint in the light most favorable to the non-moving party." *Thompson v. Horsham Township*, 576 F. Supp. 2d 681, 687 (E.D. Pa. 2008). However, the Court must dismiss the complaint if the plaintiff "does not plead all of the essential elements of his or her legal claim . . . ." *Edgar v. Avaya, Inc.* 503 F.3d 340, 349 (3d Cir. 2007).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the United States Supreme Court ruled that a plaintiff must assert more than labels and conclusions, and that a well-pleaded complaint must include facts that raise the right to relief above the "speculative level":

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. ***Factual allegations must be enough to raise a right to relief above the speculative level***, on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

*Id.* at 555-56 (emphasis added; internal citations omitted). Moreover, the Court is not required to credit bald assertions or legal conclusions in a complaint. *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634 (E.D. Pa. 2008). In *Phillips v. County of Allegheny,* 515

F.3d 224 (3d Cir. 2008), the Third Circuit provided a framework for applying the *Twombly* decision:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

*Id.* at 234 (internal quotations and citations omitted). So while Fed. R. Civ. P. 8 calls for "a short and plain statement of the claim showing that the pleader is entitled to relief," the Third Circuit has specifically noted that the *Twombly* court called for pleading beyond a "speculative level" in order to meet the Rule 8's requirements:

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case – some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964. Indeed, taking *Twombly* and the Court's contemporaneous opinion in *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), together, ***we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide defendant the type of notice of claim which is contemplated by Rule 8.*** *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Put another way, in light of *Twombly*, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests

*Phillips,* 515 F.3d at 232 (emphasis added).


## ARGUMENT

Despite evidence that the Plaintiff willingly continued her e-mail and Facebook communications with Preston even after he sent her allegedly inappropriate messages, the Complaint avers that Preston's actions caused the Plaintiff to suffer "mental pain, anguish and

agony," leading to nine causes of action. As will be shown, nearly all of these claims are time-barred as to DCCC, while at least three of the claims are subject to DCCC's immunity under the Tort Claims Act. And ultimately all of the claims must be dismissed for failure to state a claim upon which relief can be granted. This section of the memorandum will begin by explaining why seven of the nine claims are time-barred. Following that explanation, each of the nine causes of actions will be addressed individually. The brief concludes by explaining that even if any of the claims should survive, DCCC cannot be held liable for punitive damages.

I.   **THE MAJORITY OF PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

The Plaintiff alleges causes of action against DCCC based on Preston's status as their employee. However, Preston has not been a DCCC employee since being terminated on March 22, 2010, more than two years before this lawsuit was filed on July 10, 2010. Indeed, the only alleged misconduct in the two years prior to the filing of this lawsuit was Preston's alleged delivery of lewd e-mails to the Plaintiff on July 4, 2011, which occurred more than a year after Preston had been terminated from his position at DCCC.

The Plaintiff claims that the court should address her allegations under the Continuing Violations Theory, allowing her to introduce evidence of acts outside the statutes of limitations period if she can prove that the acts were part of an ongoing practice or pattern of discrimination of the defendant. *See West v. PECO*, 45 F.3d 744, 754 (3d Cir. 1995).

> To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period . . . Next, the plaintiff must establish that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination. The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.

*Id.* In this case, the Plaintiff cannot meet the standard of showing that one act involving DCCC occurred within the filing period for the seven counts with a two-year statute of limitations as any act for which DCCC was even potentially liable occurred prior to his termination in March 2010, more than two years prior to the filing of this lawsuit.[9]

Accordingly, since the Plaintiff is unable to establish the viability of the Continuing Violations Theory against DCCC, all of the Plaintiff's claims that have a two-year statute of limitations are time-barred. These claims are: sex discrimination under Title IX (20 U.S.C. § 1681 *et seq.*) (Count II)[10]; sex discrimination under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count III); hostile environment under Title IX and Pennsylvania common law

---

[9] Even if the Plaintiff were able to show an act by DCCC within the two years prior to filing of the original complaint, Plaintiff would fail on the second prong of the test, as the alleged acts were not of a continuing nature. Indeed, the acts detailed in the Complaint were extremely sporadic, as Preston allegedly flirted with the Plaintiff in class in summer 2008, followed by the majority of the allegedly inappropriate communications occurring in August 2009, and then no acts of harassment occurring until Preston allegedly sent additional messages on a single day in July 2011. Therefore, the Continuing Violations Theory is unavailable to the Plaintiff. DCCC notes that the Plaintiff is also unable to assert a Title IX claim against Preston as there is no individual liability under Title IX. *See Davis v. Monroe Cty. Bd. of Educ.*, 119 S.Ct. 1661 (1999) ("The Government's enforcement power may only be exercised against the funding recipient . . . .").

[10] It is not even clear that the continuing violation doctrine is applicable to the Plaintiff's claims, including those brought under Title IX. We have found no case applying the doctrine in a Title IX case. Furthermore, without deciding the issue, courts have expressed doubt that the continuing violations doctrine is applicable to Title IX:

> In *Gebser*, the Supreme Court explained the differences between Title VII and Title IX, noting that Title IX, like Title VI, "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." 524 U.S. at 286, 118 S.Ct. 1989. . . . *Gebser* shows the Supreme Court's reluctance to extend the reach of Title IX beyond that imposed by Congress. *Id.* at 287, 118 S.Ct. 1989 ("Title IX's contractual nature has implications for our construction of the scope of available remedies. When Congress attaches conditions to the award of federal funds under its spending power, . . . as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition.") This reasoning led the *Gebser* Court to impose the actual notice standard discussed supra, and leads this court to question the advisability of applying the oft-disfavored continuing violation exception to Title IX claims.

*Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 288-89 (E.D.N.Y. 2002).

(Count IV)[11]; vicarious liability/respondeat superior for sex discrimination under Pennsylvania common law (Count V); breach of fiduciary duty under the common law (Count VI); negligent supervision/hiring under the common law (Count VII); and common law intentional infliction of emotional distress (Count IX).

The statute of limitations for filing Title IX and Section 1983 claims in Pennsylvania is two years.[12] Accordingly, since the Plaintiff did not file suit within two years of the aggrieved actions attributed to DCCC, her claims under Title IX and Section 1983 – Counts II, III, IV – are time-barred and must be dismissed as a matter of law.

Meanwhile, to the extent that the Plaintiff's claims in Counts IV (hostile environment), V (respondeat superior), VI (breach of fiduciary duty), VII (negligent hiring/supervision), and IX (intentional infliction of emotional distress) are cognizable under the common law,[13] they also have a two-year statute of limitations and must be dismissed. *See* 42 Pa. C.S. § 5524[14]; *F&G*

---

[11] Count IV of the Complaint alleges a cause of action for hostile environment under Title IX, Pennsylvania common law and the Pennsylvania Human Rights Act ("PHRA"). Accordingly, this count is only time-barred to the extent that it is being brought under Title IX and the common law, but not the PHRA. However, as will be shown, all claims brought under the PHRA must be dismissed for failure to exhaust administrative remedies.

[12] *See Kasteleba v. Judge*, 325 Fed. App'x. 153, 156 (3d. Cir. 2009) (noting that federal courts apply a state's personal injury statute of limitation for Section 1983 claims, which in Pennsylvania is two years); *Wilson v. Garcia,* 471 U.S. 261 (1985) (affirming the use of states' statutes of limitations for torts in Section 1983 cases); *Bougher v. University of Pittsburgh,* 882 F.2d 74 (3d Cir. 1989) ("[W]e conclude that the most analogous statute of limitations [for a Title IX claim] is Pennsylvania's two-year statute of limitations period applicable to personal injury actions . . . ."); *see also* 42 Pa. C.S. § 5524 (setting a two-year statute of limitations for personal injury suits in Pennsylvania).

[13] Count V of the Complaint states a claim for "vicarious liability/respondeat superior" under the common law. However, vicarious liability is simply a theory for attributing liability for some other underlying violation and not a cause of action in and of itself. Count IV states a cause of action for "hostile environment: sex discrimination" under the common law. We are unable to find any cases holding that such a cause of action exists. *Cf. Kerans v. Porter Paint Co.*, 575 N.E.2d 428, 492-93 (Ohio 1991) (creating a common law cause of action for sexual harassment under Ohio common law). However, to the extent that these causes of action do exist under Pennsylvania common law, they are time-barred pursuant to 42 Pa. C.S. § 5524.

[14] Section 5524(2) provides a two-year statute of limitations for "An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." Section 5524(7) provides the same statute of limitations for "any other

*Assoc. v. Pomerantz,* 47 Pa. D. & C.4th 173, 175 (Phila. Com. Pl. 2000) ("The statute of limitations . . . for breach of fiduciary duty is two years."); *Ormsby v. Luzerne Cty. Office of Human Svcs.*, 149 Fed. App'x. 60, 62 (3d Cir. 2005) ("Claims for negligent supervision and intentional infliction of emotional distress brought in Pennsylvania are also governed by this two-year limitations period"). Accordingly, Counts IV, V, VI, VII and IX must be dismissed.

Indeed, the only counts in the Complaint that are not time-barred are Counts I (sex discrimination under the PHRA) and VIII (breach of contract). However, as will be shown, the Plaintiff has failed to state a claim upon which relief can be granted on these two counts, and they must also be dismissed.

## II. EACH COUNT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Count I – Sex Discrimination Under the PHRA

While the Plaintiff's claim for sex discrimination under the PHRA is one of only two that are not clearly time-barred, the claim must nevertheless be dismissed for failure to exhaust administrative remedies, and because DCCC had no knowledge of the Plaintiff's allegations.

#### 1. Failure to Exhaust Administrative Remedies

The Plaintiff filed a claim with the Pennsylvania Human Relations Commission ("PHRC") for sexual harassment/sexual discrimination on August 1, 2011. Prior to any PHRC ruling, the Plaintiff withdrew her claim. *See* Exh. 1. Despite having failed to exhaust her administrative remedies, the Plaintiff now seeks recovery in Count I for the same allegations under § 9 of the PHRA. (Compl. ¶ 86). A plaintiff must initially file a PHRA claim with the PHRC. *Tlush v. Mfrs. Res. Ctr.,* 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002). The PHRC retains

---

action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter."

exclusive jurisdiction over the claim for one year. *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (*citing* 43 P.S. § 962). If there is no action by the PHRA within that year, a plaintiff may file a civil action in federal court.

In the instant matter, the Plaintiff filed a sexual harassment/discrimination claim with the PHRA on August 1, 2011. On or about May 15, 2012, the Plaintiff voluntarily withdrew her claim with the PHRA. *See* Exh. 1. This lawsuit was then filed on July 10, 2012. As the PHRC's year of exclusive jurisdiction had not yet transpired prior to the filing of the instant action, and the PHRC never took *any* action on the claim due to the withdrawal, Plaintiff has failed to exhaust her administrative claims under the PHRA. Indeed, this Court has recognized that allowing a plaintiff to bring claims in court under the PHRA before exhausting administrative remedies before the PHRC results in "the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert." *Richards v. Foulke Assoc., Inc.*, 151 F. Supp. 2d 610, 615 (E.D. Pa. 2001). Accordingly, Count I of the Complaint must be dismissed.

### 2. DCCC Had No Knowledge of Alleged Harassment

In order to bring successful Title IX and PHRA claims,[15] a plaintiff must establish *actual knowledge* on the part of school officials for liability to attach, along with establishing a severe or pervasive atmosphere of harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999); *Jennings v. Univ. of N.C.,* 444 F.3d 255, 267-68 (4th Cir. 2006). The Plaintiff has alleged that "DCCC's agents, servants and/or employees in supervisory capacities had

---

[15]     The standard for sexual harassment claims under the PHRA is the same as for Title IX claims. *See Weston v. Commonwealth of Pennsylvania, Dept. of Corrs.,* 251 F.3d 420 (3d Cir. 2001); *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999); *Topol v. Trustee of the Univ. of Pa.*, 160 F.R.D. 474 (E.D. Pa. 1995); *see also Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567 (3d Cir.2002) (Holding that the PHRA "is to be treated as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.")

constructive and/or actual knowledge that Defendant, Preston was engaging in inappropriate sexual, harassing and lewd willful misconduct towards Plaintiff and Defendant, DCCC's other female foreign students."  Compl., ¶¶ 66-67.  However, the allegation is purely conclusory, and the paragraphs of the Complaint referenced as support for this allegation fail to even allege knowledge of any alleged harassment by anyone at DCCC.

The Plaintiff's allegation of "constructive and/or actual knowledge" by DCCC is allegedly supported by the averments of the Complaint detailing Preston's e-mails to the Plaintiff through his personal e-mail and Facebook; Preston's vague "admissions" that students had complained about Preston's classroom management (Compl., ¶¶ 34-36); a Facebook conversation between the Plaintiff and a fellow student regarding Preston (Compl., ¶¶ 42-43); and a statement from another former student commenting on Preston's classroom demeanor toward the Plaintiff (Compl., ¶ 44).  The majority of these averments bear absolutely no relation to whether or not an appropriate official at DCCC had actual knowledge of alleged misconduct by Preston.  While Preston apparently communicated with the Plaintiff, and other students may have suspected – or even known – about misconduct by Preston, there is no reason to believe that DCCC would have even had constructive knowledge of Preston's behavior, much less actual knowledge.  In fact, the only allegation in the Complaint of possible knowledge on the part of DCCC is based on Preston's e-mails to the Plaintiff referencing students' complaints against him.  However, despite the conclusory allegation that the complaint was based on Preston's "sexual, harassing and lewd" contacts with students, Preston's messages offer no basis for these allegations.  Instead, Preston does not provide any details regarding the students' complaints,

and, contrary to the Complaint's allegations, implies that the complaints were based on his classroom management style.[16]

The Complaint's conclusory allegations, unsupported by any factual averments, fail to meet the *Twombly* standard. While a court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them . . . [w]e are not, however, required to accept as true unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

As noted above, "Title IX's enforcement scheme depends on individual reporting because individuals and agency may not bring suit under the statute unless the recipient has received 'actual notice' of the discrimination." *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 1678 (2005). Moreover, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [funding recipient's] behalf has actual knowledge of discrimination and is deliberately indifferent to it." *Davis,* 526 U.S. at 629. In *Bostic v. Smyrna School Dist.*, the court held that a school district cannot be found liable under Title IX unless notice has been provided to an "appropriate person." 418 F.3d 355, 360 (3d Cir. 2005). An "appropriate person" is defined as someone "with the power to take action to correct the discrimination." *Id.*

In the instant matter, despite harassment allegedly occurring over a three-year span, Plaintiff does not allege that she ever reported Preston's behavior to anyone at DCCC, let alone

---

[16] Regarding the complaints allegedly lodged against him by students, Preston wrote: "Students lied and complained about me for nothing; they should at least complain about her [fellow DCCC instructor Mary Ann Broz] because there are reasons. The main reason they complained is I would not let them talk which was a directly [sic] result of Mary Ann allowing students to have a free for all in class." Compl., ¶ 34; Exh. A.

to an "appropriate person." The Plaintiff has also attempted to couch her allegations regarding DCCC's knowledge by alleging that an appropriate official of the College had "constructive and/or actual knowledge" of the alleged discrimination. However, the U.S. Supreme Court has made it clear that it is not enough to allege that school officials "knew or should have known" of sexual harassment, but rather one claiming such discrimination must establish *actual knowledge* on the part of school officials. *Davis,* 526 U.S. at 629; *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 274 (2006). In *Gebser,* the Supreme Court clearly held, "[W]e will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." *Id.* at 292-93.

Nowhere does the Complaint allege any facts to even hint that any DCCC official had actual notice of the allegations or were deliberately indifferent to them. Accordingly, Plaintiff's claim for sex discrimination under Title IX and the PHRA must be dismissed.

### B. Count II – Sex Discrimination Under Title IX

As detailed above in § II.A.2, a Title IX discrimination claim requires that an "appropriate person" have actual knowledge of the alleged discrimination. And since the Plaintiff has failed to properly allege this element of her Title IX claim, the claim must fail. Also, as noted in § I, this claim is time-barred as no acts occurred while Preston was a DCCC employee within the two years prior to filing of this lawsuit. Accordingly, Count II must be dismissed.

### C. Count III – Sex Discrimination Under the 14th Amendment Pursuant to § 1983

In Count III, the Plaintiff alleges that Preston's actions constituted a violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Compl.

¶¶ 113-135.  In addition to being time-barred,[17] this claim suffers from the fatal flaw that the Plaintiff has failed to plead the basic elements of an Equal Protection claim, and has also failed to identify any policy, practice or custom under which DCCC was operating when Preston allegedly sexually discriminated against her.

### 1.     Plaintiff Fails to Plead Basic Elements of an Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1.  To state a claim based on the Equal Protection Clause, a plaintiff must allege that he is a member of a protected class, was similarly situated to members of an unprotected class, and was treated differently from the unprotected class.  *See Wood v. Rendell*, No. 94-CV-1489, 1995 WL 676418 (E.D. Pa. Nov. 3, 1995) (*citing Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990)).  A plaintiff must show "intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual."  *Poli v. SEPTA*, No. 97-CV-6766, 1998 WL 405052, at *10 (E.D. Pa. July 7, 1998).

Facts to support these elements of the claim do not appear in the Complaint.  The Plaintiff never states the protected class to which she belongs.  *See* Compl., ¶¶ 113-135.  And while Count III seems to allege that the Plaintiff's alleged protected class might be "female foreign students" at DCCC (*see* Compl., ¶ 120), she never begins to allege either that she was similarly situated to other students not in her protected class, or that she or other "female foreign students" were treated differently than the other students.  Accordingly, the Complaint fails to state a claim for a violation of the Equal Protection Clause upon which relief can be granted.

---

[17]     *See* § I, *supra*.

## 2.        No Policy, Practice or Custom Has Been Pleaded

DCCC cannot be held vicariously liable under Section 1983; rather there must be proof that its policy or custom was the "moving force" behind the constitutional violation, meaning that an authorized decision-maker intentionally deprived plaintiff of a federally protected right. *Monell v. Dep't of Social Svcs. of the City of N.Y.,* 436 U.S. 658, 690-91 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."); *Bd. of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404-05 (1997) (holding that a plaintiff must show deliberate conduct to prove governmental liability). "In order for the governmental entity to be responsible for a policy, that policy must be 'officially adopted and promulgated by that body's officers' or made 'by those whose edicts or acts may fairly be said to represent official policy.'" *Gremo v. Karlin,* 363 F. Supp. 2d 771, 792 (E.D. Pa. 2005) (*quoting Monell* at 690-91).[18]   Plaintiff must show a "'direct causal link' between [the College's] policy and a constitutional violation," and that the College acted with deliberate indifference towards the rights of others. *Sanford v. Stiles,* 456 F.3d 298, 314 (3d Cir. 2006) (citations omitted). To prove deliberate indifference, the Plaintiff must show that the College "disregarded a known or obvious consequence of [its] action." *Id.* (*citing Brown,* 520 U.S. at 410); *see also Evans v. Port Authority Trans–Hudson Corp.*, No. 04-4062, 2006 WL 408391 at *6 (3d Cir. Feb.23, 2006) (requiring actual knowledge and/or acquiescence for a 1983 claim).

In this case, the Plaintiff does not make any allegations specific to any actions by any policymaker at the College.  The only allegations in the Complaint regarding DCCC are that

---

[18]        "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000).  Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown,* 520 U.S. at 403-04.

"DCCC failed to create a policy for the implementation and enforcement of a supervision system of its agents, servants and/or employees and faculty members in order to protect Plaintiff . . . ."; DCCC failed to distribute its "Student's handbook" to foreign female students; and DCCC failed to educate students and faculty members that the "student-professor relationship is strictly professional." Compl., ¶¶ 120-122.[19] However, these claims are merely alleged omissions, failing to show deliberate actions on the part of DCCC as required to support a Section 1983 claim. The Complaint also fails to identify a single DCCC policy, practice or custom that may have caused Preston to engage in the alleged acts towards the Plaintiff.[20] The Plaintiff also fails to allege that there were any prior, similar incidents involving other students to establish indifference on the part of DCCC. No official actions are alleged regarding DCCC's board of trustees, which is the policymaker for the College, nor are the actions of any board member alleged as leading to the alleged harassment. Accordingly, the Plaintiff has failed to plead sufficient facts to establish a policy, practice or custom of the College sufficient to implicate municipal liability under Section 1983, and Count III must be dismissed.

### D. Count IV – Hostile Environment Under Common Law, Title IX and PHRA

In addition to being time-barred, this claim must fail because the Plaintiff has failed to properly allege that DCCC had actual knowledge of Preston's alleged actions, a required element of a claim under Title IX and the PHRA. *See* § I; § II.A.2, *supra*. The PHRA claim also fails due to the Plaintiff's failure to exhaust her administrative remedies. *See* § II.A.1, *supra*. Furthermore, hostile environment discrimination is not a common law cause of action in Pennsylvania. For all of these reasons, Count IV must be dismissed.

---

[19] While the Plaintiff claims that DCCC did not have a policy to prevent sexual harassment, DCCC's sexual harassment policy is attached as an exhibit to the Complaint. See Exh. H.

[20] Additionally, as noted above, the Plaintiff does not allege that she timely notified *anyone* at DCCC of the alleged abuse and harassment, including other students or staff.

### E. Count V – Vicarious Liability/Respondeat Superior

Count V of the Complaint alleges a cause of action for "Vicarious Liability/Respondeat Superior" under the common law.[21]  However, despite the Plaintiff's rambling attempt over 21 paragraphs to support this claim, the fact is that respondeat superior is not a separate cause of action under the common law, but rather a method to impute liability to a principal for the actions of an agent.  *See, e.g.*, *Care v. Reading Hosp. & Med. Ctr.*, No. 2003-CV-04121, 2004 WL 728532 (E.D. Pa. Mar. 31, 2004) ("[R]espondeat superior does not constitute a separate cause of action . . . .").  Accordingly, Count V must be dismissed.

### F. Count VI – Breach of Fiduciary Duty Under Common Law

In addition to being time-barred, the Plaintiff's breach of fiduciary duty claim must fail because the Plaintiff is unable to establish the existence of a fiduciary relationship between herself and DCCC, nor any breach of any duty owed based on such a relationship.

#### 1. No Fiduciary Relationship Existed Between the Plaintiff and DCCC

A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. *Restatement (Second) of Torts*, § 874 cmt. a (1979).  In Pennsylvania, to state a claim for breach of fiduciary duty a plaintiff must allege: (1) the defendant acted negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries. *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998).

---

[21]     During the hearing on DCCC's motion to dismiss the First Amended Complaint, this Court advised the Plaintiff's counsel that vicarious liability is not a separate cause of action, and that counsel should review the issue before filing the Second Amended Complaint.  *See* Transcript of Oral Argument, pp. 39-40, attached hereto as Exhibit 2.  The Court's advice apparently went unheeded.

In this case, the Plaintiff has not pleaded any facts that would establish a fiduciary relationship between herself and DCCC, nor has she pleaded any facts that would suggest the College either negligently or intentionally failed to act in good faith or for her benefit. The only allegation regarding the alleged fiduciary relationship is that "when the Plaintiff enrolled at Defendant DCCC's college, she became dependent on both Defendant, DCCC, and Defendant, Preston, for her education . . . ." Compl., ¶ 180. The simple act of enrolling does not create a fiduciary relationship between every student and DCCC. There is no case law in Pennsylvania holding that a college has a fiduciary relationship with its students, and case law from other jurisdictions concludes that no such relationship exists. *See, e.g.*, *Morris v. Brandeis Univ.*, 13 Mass. L. Rptr. 627 (Mass. Super. 2001) (holding that the relationship between students and universities is contractual rather than fiduciary); *Zumbrun v. Univ. of Southern Calif.*, 25 Cal. App. 3d 1, 13 (1972) (same).

Even if the Court were to find that a fiduciary duty did exist between the Plaintiff and DCCC, there have been no facts pleaded to establish that DCCC failed to act in good faith or for Plaintiff's benefit. Plaintiff makes no allegations in her Amended Complaint that she ever notified anyone at the College, other than Preston, about the alleged harassment. Nor does the Plaintiff allege that any other students reported the same or similar concerns about Preston to DCCC. Moreover, there are no allegations that inaction by DCCC was the "real factor" in the Plaintiff's injuries.

Accordingly, as the Plaintiff has not alleged sufficient facts to support her breach of fiduciary duty claim, the claim must be dismissed.

## 2.    The Tort Claims Act Provides DCCC Immunity From Tort Claims

Under the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541 *et seq.* (the "Tort Claims Act"), municipalities, their employees and officials are, as a general rule, immune from tort liability.   In addition to the breach of fiduciary duty claim in Count VI, the College is afforded immunity under the Tort Claims Act for Count VII (negligent hiring/supervision) and Count IX (intentional infliction of emotional distress).[22]   In Pennsylvania, as a general rule, local agencies – including community colleges – are immune from any suit based in tort pursuant to the Tort Claims Act.   *Community College v. Seibert*, 601 A.2d 1348 (Pa. Commw. 1992), *affirmed,* 622 A.2d 285 (Pa.).   The Tort Claims Act states as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person.

42 Pa. C.S. § 8541. In light of this general rule, in order for the Plaintiff to hold DCCC liable in tort, she must prove that the redress she seeks from the College is recoverable under a common law or statutory right of action.   42 Pa. C.S. § 8542(a)(1).   If that threshold is met, the Plaintiff must show that her injury was caused by the *negligent acts* of the College or its employee acting within the scope of their office or duties, falling within one of eight exceptions to immunity found in 42 Pa. C.S. § 8542(b) in order to recover.

---

[22]    Claims for breach of fiduciary duty, negligent hiring/supervision and intentional infliction of emotional distress ("IIED") against municipalities are routinely dismissed under the Tort Claims Act. *See, e.g.*, *Sewickley Twp. Volunteer Fire Co. No. 3 v. First Nat'l Bank*, 8 Pa. D. & C.4th 297 (C.P. Westmoreland 1990) (breach of fiduciary duty); *Vicky M. v. NE Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 459-60 (M.D. Pa. 2007) (same); *Joyner v. School Dist. of Phila.*, 313 F. Supp. 2d 495 (E.D. Pa. 2004) (negligent supervision); *Erb v. Greenmount Comm. Fire Co., Inc.*, 63 Pa. D. & C.4th 353 (C.P. Adams 2003) (same); *Moles v. Borough of Norristown*, 780 A.2d 787 (Pa. Commw. 2001) (same); *Crosby v. Kotch*, 580 A.2d 1191 (Pa. Commw. 1990); *Lakits v. York*, 258 F. Supp. 2d 401 (E.D. Pa. 2003) (IIED); *Thompson v. Wynnewood of Lower Merion Twp.*, No. 12-2308, 2012 WL 4033706 (E.D. Pa. Sept. 13, 2012) (Slomsky, J.) (same).

In this case, none of the acts imputed to the College fall within the eight exceptions to immunity under the Tort Claims Act, which are: (1) the operation of a motor vehicle; (2) the care, custody or control of personal property; (3) the care, custody or control of real property; (4) a dangerous condition of trees, traffic signs, or other traffic controls; (5) a dangerous condition of utility service facility; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of certain animals. 42 Pa. C.S. § 8542(b).

Courts have strictly construed the requirement that the general grant of immunity found within the Tort Claims Act acts as a bar to recovery unless the plaintiff's cause of action falls within one of the above eight exceptions. *Mascaro v. Youth Study Center,* 523 A.2d 1118, 1120 (Pa. 1987). In the instant matter, none of the Plaintiff's tort causes of action fall within any of the immunity exceptions, nor has she pled that any causes of action involve the conditions for exception to immunity. Accordingly, Count VI – as well as Counts VII and IX– must be dismissed.

### G. Count VII – Negligent Hiring and Supervision Under Common Law

In addition to being time-barred, Plaintiff's claim for negligent hiring/supervision must be dismissed due to DCCC's immunity to tort claims under the Tort Claims Act. *See* § II.F.2, *supra*. Additionally, this claim is not cognizable under the alleged facts as Preston clearly was not acting within the scope of his employment when he allegedly engaged in the averred acts, nor has the Plaintiff plead any facts that would support a claim for negligent hiring.

Negligent supervision claims may be premised on respondeat superior liability but only where the employee was acting within the course and scope of his employment. To determine whether an employee is acting within the course and scope of his employment, the Pennsylvania appellate courts have endorsed the test set forth in the Restatement (Second) of Agency:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits;
>> (c) it is actuated, at least in part, by a purpose to serve the master, and
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency, § 228; *see Fitzgerald v. McCutcheon,* 410 A.2d 1270 (Pa. Super. 1979).

The TOEFL course that the Plaintiff attended at DCCC from June 2008 until August 5, 2008, is the only course for which Preston was the Plaintiff's instructor. According to the Complaint, the alleged inappropriate acts by Preston occurred *after* the TOEFL course had concluded, and after Preston was terminated by the College. Compl., ¶ 15 ("Beginning on August 7, 2008, and continuing through and including July 4, 2011, Defendant, Preston . . . was engaging in an on-going practice or pattern of sexual discrimination . . . ."). Meanwhile, Preston's messaging comments via his personal e-mail account and Facebook was not conduct that he was employed to perform and does not further any interest of DCCC. Therefore, Preston could not as a matter of law be deemed to be serving DCCC when he allegedly engaged in such conduct. Similarly, many of the e-mails were critical of DCCC, Preston's co-workers, and other students; were sent beyond normal working hours and days; and occurred *after* he was no longer acting as Plaintiff's professor, such that Preston cannot be said to have been acting by a purpose to "serve the master," nor within the "authorized time and space limits." *Restatement (Second) of Agency,* § 228(b),(c). Accordingly, Count VII must be dismissed.

## H.      Count VIII – Breach of Contract Under Common Law

Count VIII of the Complaint alleges a breach of an implied contract, claiming that DCCC breached an alleged duty under the College's Nondiscrimination and Harassment/Sexual Harassment Policy (the "Harassment Policy").   However, even if an implied contract did exist between DCCC and the Plaintiff, the Plaintiff fails to allege that DCCC breached the contract.

The Plaintiff claims that under the implied contract, the Plaintiff agreed to pay tuition and complete educational course requirements, and in turn, DCCC would grant her an associate's degree.  Compl., ¶ 233.  The Plaintiff goes on to claim that the terms of the implied contract were contained in "DCCC's college catalogs, bulletins, circulars, and regulations made available to Plaintiff . . . ."  Compl., ¶ 234.  The Plaintiff then alleges that DCCC violated the Harassment Policy, and thereby breached the terms of the implied contract, by, *inter alia*, not providing not providing a learning environment free from discrimination and not encouraging faculty or students to "bring questions about sexual harassment,."  Compl., ¶ 236.

In bringing this claim, the Plaintiff attempt to equate this matter and the Harassment Policy employment actions in which employees allege that employee handbooks supplant an employee's at-will employment status.   Importantly, those cases hold that the court must interpret the handbook to determine whether it contains evidence of employer's intention to be legally bound.  *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 660 (3d Cir.1990).  In this case, the Harassment Policy contains no evidence that DCCC intended to be legally bound by the policy.  Furthermore, this Court has found that vague or aspirational statements – such as the Harassment Policy's stated goal to provide an environment free from discrimination and harassment – cannot form the basis for an enforceable agreement where there is no indication that the parties intended to enter into a bargain.  *See Ankerstjerne v. Schlumberger Ltd.*, No. 03-

3607, 2004 WL 1068806, at *13-14 (E.D. Pa. May 12, 2004) (under Pennsylvania law, "a broad and vague implied promise is not enough" to induce reasonable reliance); *see also Minehan v. United States*, 75 Fed. Cl. 249, 260 (2007) (the mission statement of the IRS – "to provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all" – is merely "aspirational, and it makes no specific promise or offer which could be deemed the basis for a contract"). Courts have also held that school publications – such as the Harassment Policy – are not generally a valid source of contract. *See, e.g.*, *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230 (E.D. Pa, Dec. 30, 2004) *aff'd* 157 Fed. App'x. 509 (3d Cir. 2005) (applying Pennsylvania law and rejecting breach of contract claim based in part on an allegation that the university failed to follow procedures set forth in the student handbook); *Giuliani v. Duke University*, No. 1:08-cv-502, 2010 WL 1292321 (M.D.N.C. Mar. 30, 2010) (holding that statements found in the university's handbooks, manuals, and bulletins are not contracts). Therefore, the Plaintiff can not maintain her breach of implied contract claim whether or not DCCC violated the Harassment Policy.

Even if the Plaintiff could maintain her claim, she has failed to show that DCCC breached its aspirational goal to provide an educational environment free from harassment, as she failed to provide anything other than conclusory allegations that DCCC had any knowledge of Preston's alleged actions. And importantly, the Plaintiff never reported Preston's alleged actions so that DCCC could investigate the allegations. Accordingly, the Plaintiff has failed to state a claim for breach of implied contract, and Count VIII must be dismissed.

# I.    Count IX – Intentional Infliction of Emotional Distress Under Common Law

In addition to being time-barred, Plaintiff's claim for intentional infliction of emotional distress ("IIED") must be dismissed due to DCCC's immunity to tort claims under the Tort Claims Act.  *See* § II.F.2, *supra*.  Furthermore, Plaintiff's IIED claim must also be dismissed as the Plaintiff has failed to allege the type of outrageous behavior necessary to state such a claim. This Court has stated that "[f]or a plaintiff to recover on an intentional infliction of emotional distress claim, '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Imboden v. Chowns Communications*, 182 F. Supp. 2d 453 (E.D. Pa. 2002) (*quoting Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).

The Plaintiff's IIED claim is based solely on the same operative facts of all of the other claims, basically that Preston allegedly sexual harassed the Plaintiff and that DCCC allegedly allowed the harassment to occur.  *See* Compl., ¶¶ 252-254.  However, even if the allegations were true, they do not rise to the level of IIED.  As the *Imboden* court noted:

> [A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress.  *Andrews v. City of Phila.*, 895 F.2d 1469, 1487 (3d Cir.1990). The extra factor that is generally required is retaliation for turning down sexual propositions.  Offensive comments and gestures in the workplace, even though sexually explicit, are not enough to satisfy the Andrews extra requirement of sexual propositions.  Andrews ***requires*** that a Plaintiff allege retaliation based on a rejection of sexual advances or propositions.

*Imboden*, 182 F.Supp.2d at 458 (emphasis added; internal quotations omitted).  Accordingly, since the Plaintiff has failed to allege any action other than sexual harassment, she has failed to state a claim for IIED under the standard established in *Andrews*, and therefore County IX must be dismissed.

### III. PUNITIVE DAMAGES CLAIMS AGAINST DCCC MUST BE DISMISSED

In Counts IV through IX of the Complaint, the Plaintiff seeks relief in the form of punitive damages against DCCC. To the extent that any claims against DCCC survive, punitive damages are unavailable against a public entity, and therefore, Plaintiff cannot make a claim for such relief. In *Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981), the U.S. Supreme Court held that allowing punitive damages against public entities violated public policy and, thus, punitive damages are not recoverable under Section 1983. In pertinent part, the Court reasoned:

> Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments. A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for <u>punitive</u> purposes, therefore, are not sensibly assessed against the government entity itself.

*Id*. at 267 (emphasis in original; citations omitted); *see also Bolden v. SEPTA,* 953 F.2d 807, 830 (3d Cir. 1991) (holding that a regional transit authority "like a municipality, is immune from punitive damages under Section 1983."); *Agresta v. Goode,* 797 F. Supp. 399 (E.D. Pa. 1992) (punitive damages not available against a municipality or municipal officials acting in their official capacities).

Further, punitive damages are not recoverable in private actions against institutions under Title IX. Relying on the Supreme Court's decision in *Barnes v. Gorman,* 536 U.S. 181 (2002), the Court in *Mercer v. Duke University* reasoned that because punitive damages are not available in Title VII actions, and it is well established that Title IX is modeled after Title VII, punitive damages are not available for private actions under Title IX. 401 F.3d 199 (4th Cir. 2005); *see also Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 383 (W.D. Pa. 2008); *Collier v. William Penn Sch. Dist.*, 956 F. Supp. 1209, 1217 (E.D. Pa. 1997); *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-cv-1727, 2010 WL 4853700 (M.D. Pa. 2010).

Punitive damages are also not available for tort claims against public entities, as Plaintiff has sought in Counts VI, VII and Count IX. *Feingold v. SEPTA,* 517 A.2d 1270 (Pa. 1986). In *Feingold*, the Pennsylvania Supreme Court followed the reasoning of the *Newport* decision and discussed the longstanding policy precluding the recovery of punitive damages against public entities:

> What we are faced with is a situation where the public policy implications of assessing damages, effectively against the taxpayers and public at large, must be weighed against the necessity of punishing the entity which has been entrusted with performing a public function. In *Newport v. Fact Concerts, Inc.*, *supra*, the Supreme Court of the United States addressed this issue thusly:
>
>> 'Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. (citation omitted). Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or reduction of public services for citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.' *Id.* at 267, 101 S.Ct. at 2759-60.
>
> We agree with the concerns expressed by the Court.

*Newport*, 517 A.2d at 1277. Similarly, courts in Pennsylvania have concluded that punitive damages are not available for an action sounding solely in breach of contract. *DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 370 (Pa. Super. 2003). The Pennsylvania Supreme Court has likewise held that "[i]n the absence of express statutory language or any further legislative guidance, we hold that punitive damages are not available under the [PHRA]." *Hoy v. Angelone,* 720 A.2d 745, 751 (Pa. 1998); *see also Gagliardo v. Connaught Labs,* 311 F.3d 565, 570 n.2 (3d. Cir. 2002) (accord).

Accordingly, should any claims against the College survive the motion to dismiss, Plaintiff cannot recover punitive damages against DCCC.

## CONCLUSION

In consideration of all the arguments set forth above, DCCC respectfully requests that the Complaint be dismissed with prejudice in its entirety as to all claims brought against it. Moreover, DCCC respectfully requests that this honorable Court exercise its supplemental jurisdiction to address *all* of the Plaintiff's claims raised in the Motion, even if all of the federal claims are dismissed, as this is a case-ending motion for this defendant.

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

Date:   December 18, 2012

 /s/  Allison S. Petersen
Allison S. Petersen, Esquire (ID # 86335)
David W. Brown, Esquire (ID # 201553)
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone: (215) 938-6378
apetersen@levinlegalgroup.com
dbrown@levinlegalgroup.com

*Counsel for the Delaware County*
*Community College*