IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KSENIYA GJEKA, A/K/A KSENIYA MELNYCHENKO,<br><br>                 Plaintiff,<br><br>     v.<br><br>DELAWARE COUNTY COMMUNITY COLLEGE<br><br>     and<br><br>JOHN PRESTON,<br><br>                 Defendants. | CIVIL ACTION<br>NO. 12-4548 |

## OPINION

**Slomsky, J.**                                                                              **May 23, 2013**

## I.        INTRODUCTION

Before the Court are two Motions to Dismiss for Failure to State a Claim (Doc. Nos. 19 and 21) filed by Defendant Delaware County Community College ("DCCC") and Defendant John Preston ("Preston"), respectively.

Plaintiff Kseniya Gjeka ("Plaintiff") originally filed suit against Preston and DCCC in the Court of Common Pleas of Delaware County on July 10, 2012 (Doc. No. 3 at 3).[1]  In her Second Amended Complaint, she alleges that Preston, her professor at DCCC, sexually harassed her over a three year period and that DCCC knew or should have known about the harassment.  The date

---

[1] As noted, on July 10, 2012, Plaintiff filed her initial Complaint in the Court of Common Pleas of Delaware County.  (Doc. No. 1.)  On August 10, 2012, the case was removed to this Court. (Id.)  On December 4, 2012, Plaintiff filed a Second Amended Complaint.  (Doc. No. 17.)  The Second Amended Complaint is the only complaint filed after the original Complaint was filed and is the one Defendants are challenging in the Motions to Dismiss.

Plaintiff filed her initial Complaint in state court is critical because the Court must determine the viability of her claims under the applicable Pennsylvania statute of limitations.

The Motions to Dismiss are now ripe for adjudication.[2]  For reasons that follow, the Court will grant Preston's Motion in its entirety, and will grant DCCC's Motion in part and deny it in part.  In considering the Motions to Dismiss, the Court has concluded that more than one reason warrants dismissal of certain claims.

## II.      FACTUAL BACKGROUND

Plaintiff, a Ukrainian citizen, registered about January 2008 as an international student in the Science for Health Professions program at DCCC.  (Doc. No. 17 at 4.)  From June to August 2008, Plaintiff was enrolled in the TOEFL[3] Preparatory course offered by DCCC.  (Id.) Defendant Preston, a DCCC employee, was the TOEFL course professor.  (Id.)  Plaintiff avers that Preston "flagrantly flirted with Plaintiff in class."  (Id.)  Plaintiff further alleges that during the course, Preston "handwrote a flagrant solicitation" on Plaintiff's classwork, "wrongfully providing Plaintiff with. . . Preston's personal e-mail address, telephone number, and an explicit and inappropriate request that Plaintiff send. . . Preston personal photographs. . . ."  (Id. at 5.)

---

[2] In reaching its decision, the Court considered Preston's Motion to Dismiss (Doc. No. 19), DCCC's Motion to Dismiss (Doc. Nos. 21 and 22), Plaintiff's Response in Opposition to DCCC's Motion (Doc. No. 23), Plaintiff's Response in Opposition to Preston's Motion (Doc. No. 24), and DCCC's Reply (Doc. No. 25).

[3] The "Test of English as a Foreign Language" (or TOEFL, pronounced "toe-full") tests the ability of a person to use and understand English in an academic setting.  TOEFL is designed and administered by the Educational Testing Service.

Plaintiff contends that Preston asked her on August 6, 2009 to send him a "friend request" on the social media website Facebook.[4]  (Id.)  On the same date, Preston sent Plaintiff an e-mail stating: "We should have lunch or dinner — I am not cheap like your ex-boyfriend; I will take you to a nice place.  We both have some free time coming up."[5]  (Id. at 5.)  Plaintiff further contends that from August 7, 2008 to July 4, 2011, Preston sent "unsolicited, inappropriate, flirtatious and harassing messages" to her through her personal e-mail account and Facebook.  (Id. at 6.)[6]

On March 22, 2010, during the time when Preston was sending the e-mails and contacting Plaintiff over the internet, Preston was terminated from DCCC.  (Id. at 50.)  There are no averments in the Second Amended Complaint that Preston was terminated for reasons related to Plaintiff or her allegations against him.  (Doc. No. 22 at 5.)  On July 13, 2010, Preston sent an e-mail to Plaintiff notifying her that he was no longer working for DCCC.  (Id.)

As a result of Preston's conduct, Plaintiff filed a claim on or about August 1, 2011 with the Pennsylvania Human Relations Commission ("PHRC") for sexual harassment/sexual discrimination under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq.  (Id.)  On May 15, 2012, Plaintiff voluntarily withdrew her claim filed with the PHRC.  (Id.)

---

[4] Plaintiff claims that Preston's request was ". . . unsolicited and unwelcomed by Plaintiff, which induced Plaintiff to sustain anxiety, embarrassment and mental anguish, all of which continues to and including the present."  (Doc. No. 17 at 5.)

[5] Plaintiff characterizes this e-mail as "inappropriate, lewd, and salacious. . . ."  (Doc. No. 17 at 5.)

[6] Plaintiff did not attach to the Second Amended Complaint or include in the record the e-mails, Facebook messages, or any other communication between Plaintiff and Preston from July 13, 2010 to July 4, 2011.  (Doc. No. 17 at 16.)  On July 4, 2011, Preston sent Plaintiff a sexually explicit e-mail.  (Id.)

On July 10, 2012, Plaintiff filed suit against DCCC and Preston in the Court of Common

Pleas of Delaware County, asserting the following claims against each Defendant:

1) Count 1 alleges sex discrimination in violation of the Pennsylvania Human Relations Act ("PHRA");
2) Count 2 alleges sex discrimination in violation of Title IX;[7]
3) Count 3 alleges sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment[8] pursuant to § 1983;[9]
4) Count 4 alleges the creation of a hostile environment in violation of Pennsylvania common law, Title IX, and the PHRA;
5) Count 5 alleges Vicarious Liability/Respondeat Superior;
6) Count 6 alleges a breach of fiduciary duty;
7) Count 7 alleges negligent supervision and hiring;
8) Count 8 alleges a breach of contract; and
9) Count 9 alleges an intentional infliction of emotional distress.

(See Doc. No. 17 at 20-64.)

On September 13 and 14, 2012, Defendants filed Motions to Dismiss the original

Complaint for Failure to State a Claim.  (Doc. Nos. 9 and 10.)  On October 24, 2012, the Court

held a hearing on the Motions.  At the hearing, Plaintiff agreed to file a Second Amended

Complaint.  (Tr. of Oral Argument 29:4-25, Oct. 24, 2012 [hereafter "Oral Argument"].)

On December 12, 2012, Plaintiff filed the Second Amended Complaint.[10]  (Doc. No. 17.)

On December 18, 2012, Preston and DCCC each filed another Motion to Dismiss for Failure to

---

[7] Title IX is codified at 20 U.S.C. § 1681 et seq. and provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

[8] The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[9] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

State a Claim.  (Doc. Nos. 19, 21.)  On January 2, 2012, Plaintiff filed her Response to the

Motions to Dismiss.  (Doc. Nos. 23 and 24.)  On January 9, 2013, DCCC filed its Reply.  (Doc.

No. 25.)

Only Counts 2, 3, and 4 of the Second Amended Complaint assert claims that are the

basis of federal jurisdiction.  For reasons set forth infra, these claims and others will be

dismissed.   The one remaining state law claim for breach of contract will be remanded to state

court.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must state a plausible claim in the complaint.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

556 (2007)).  In Iqbal, the leading case on the matter, the court explained that the plausibility

standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. at

678.  This means that a simple recitation of the elements of a claim, accompanied by conclusory

statements of law, will not suffice.  Id. (citing Twombly, 550 U.S. at 555.)

Applying this principle, in Malleus v. George, the Third Circuit explained that the inquiry

requires that a district court:  "(1) identify[] the elements of the claim, (2) review[] the complaint

to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the

complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are

sufficiently alleged."  641 F.3d 560, 563 (3d Cir. 2011).  Elements are sufficiently alleged when

the facts in the complaint "show" that the plaintiff is entitled to relief.  Iqbal, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-

---

[10] At the hearing, Plaintiff was requested to identify each Defendant named in a Count at the
beginning of the Count.  (Oral Argument, 52: 4-19.)  With the exception of Count 9, where no
Defendant is listed, all Counts now state that they apply to "both named defendants."  (See e.g.,
Doc. No. 17 at 39.)

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

### A. The Statute of Limitations Bars All But One Claim against DCCC

DCCC submits that most of the claims against it are time-barred under the Pennsylvania statute of limitations. (Doc. No. 22 at 9.) In Pennsylvania, any action to recover damages for injury to a person based on negligent, intentional, or otherwise tortious conduct must be commenced within two years of the occurrence of the injury. 42 Pa. Cons. Stat. § 5524(7). The two year statute of limitations also applies to any action to recover damages under 42 U.S.C. § 1983 or Title IX. See Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. 2009) (stating that federal courts apply a state's personal injury statute of limitations claims to § 1983 claims); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 77-78 (3d Cir. 1989) (concluding that "the most analogous statute of limitations [for a Title IX claim] is Pennsylvania's two-year statute of limitations period applicable to personal injury actions. . . ."). Actions based on breach of an express or implied contract, however, must be instituted within four years of the breach. 42 Pa. Cons. Stat. § 5524(a).

Federal Rule of Civil Procedure 8(c)(1) provides: "In responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . statute of limitations." An affirmative defense such as a statute of limitations defense must be raised at the earliest possible moment in litigation, which is normally in the answer. Robinson v. Johnson, 313 F.3d 128, 134–37 (3d Cir. 2002). Under what is commonly referred to as the "Third Circuit Rule," it is permissible for "a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought

within the statute of limitations.'"  Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans'

Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  Thus, a statute of limitations defense may

be raised in a Rule 12(b)(6) motion "where the complaint facially shows noncompliance with the

limitations period and the affirmative defense clearly appears on the face of the pleading."

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.2d 1380, 1385 n.1 (3d Cir. 1994).

        In considering whether the statute of limitations period expired against DCCC before the

original Complaint was filed, the actions of its employee Preston are crucial to this decision.  It is

well settled that an employer can be vicariously liable for the actions of an employee that cause

injuries to a third party, if the conduct of the employee is within the employee's scope of

employment.  See Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998).

"The conduct of an employee is considered 'within the scope of employment' for purposes of

vicarious liability if: 1) it is of a kind and nature that the employee is employed to perform; 2) it

occurs substantially within the authorized time and space limits; 3) it is actuated, at least in part,

by a purpose to serve the employer; and 4) if force is intentionally used by the employee against

another, the use of force is not unexpected by the employer."  Id. (citing Fitzgerald v.

McCutcheon, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979).

        Plaintiff avers here that Preston continuously harassed her from approximately August

2008 until July 4, 2011.  (Doc. No. 17 at 6.)  Consequently, Plaintiff contends that she satisfied

the Pennsylvania two year statute of limitations for tort claims, by filing this action on July 10,

2012.  But Preston was terminated from DCCC on March 22, 2010, at which point he stopped

being an employee of DCCC.  (Doc. No. 17 at 50.)  Since Preston was not an employee after

March 22, 2010, his conduct after his termination was not within the scope of his employment

and DCCC is therefore not vicariously liable for any post-termination conduct.  Accordingly, any

action against DCCC for Preston's actions should have been instituted by March 22, 2012, or two years after his termination from DCCC.  Since the original Complaint was filed on July 10, 2012, the statute of limitations bars Plaintiff from asserting tort claims against DCCC.

Recognizing this impediment to her case, Plaintiff argues, in the alternative, that the Pennsylvania statute of limitations was tolled for all claims existing on or before August 1, 2011, when she filed her PHRC claim.  (Doc. No. 23 at 18-19.)  Filing a discrimination action with the PHRC, however, does not toll the Pennsylvania statute of limitations for state law claims.  See Hartman v. Sterling, Inc., No. 01-cv-2630, 2003 WL 22358548, at *14 (E.D. Pa. Sept. 10, 2003) (state law claims of wrongful discharge, breach of contract, tortious interference with plaintiff's right to continue employment, negligent hiring, retention, and supervision, and intentional infliction of emotional distress were not tolled by filing an action with the PHRC).  The same holding would apply to the federal causes of action alleged in the Second Amended Complaint.  Accordingly, the Pennsylvania statute of limitations was not tolled when Plaintiff filed her PHRC claim.

As a second alternative, Plaintiff argues that the Court should apply the continuing violations theory in order to overcome the statute of limitations bar.  Under the continuing violations theory, discriminatory acts that are not individually actionable may be aggregated for purposes of a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Nat. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) (explaining that a court may consider the "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period")).

The Third Circuit has applied the continuing violations theory to a Title VII claim involving sexual discrimination.  Mandel v. M. & Q. Packaging Corp., 706 F.3d 157, 165-66 (3d Cir. 2013).  Neither party, however, has cited a case that applies the continuing violations theory to a Title IX claim of sexual discrimination.  One court addressed the potential applicability of the continuing violations theory to a Title IX claim without deciding the issue.   Folkes v. N.Y. Coll. of Osteopathic Med. Of N.Y. Inst. Of Tech., 214 F. Supp. 2d 273, 288-289 (E.D.N.Y. 2002). The Folkes court expressed doubt that the theory would apply to a Title IX claim, reasoning that the theory "may well be a poor fit with the goals of Title IX."  Id.  The court elaborated:

> In Gebser, the Supreme Court explained the differences between Title VII and Title IX, noting that Title IX, . . . "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." 524 U.S. at 286, 118 S.Ct. 1989. . . .
>
> Gebser shows the Supreme Court's reluctance to extend the reach of Title IX beyond that imposed by Congress. Id. at 287, 118 S.Ct. 1989 ("Title IX's contractual nature has implications for our construction of the scope of available remedies. When Congress attaches conditions to the award of federal funds under its spending power, . . . as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition.") This reasoning led the Gebser Court to impose the actual notice standard discussed supra, and leads this court to question the advisability of applying the oft-disfavored continuing violation exception to Title IX claims.

Id.

This Court agrees with the rationale set forth in Folkes.  With no precedent being cited to the contrary, the Court will not expand the continuing violations theory beyond its application to a hostile work environment claim under Title VII, which is not changed in this case.  Since the continuing violations theory is not applicable here, for reasons noted above, all claims against

DCCC that fall under Pennsylvania's two year statute of limitations for personal injury must be dismissed as untimely.[11]  These claims are:

- Count 1, sex discrimination under the PHRA
- Count 2, sex discrimination under Title IX;
- Count 3, sex discrimination under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;
- Count 4, hostile environment under Title IX and Pennsylvania common law;
- Count 5, vicarious liability/respondeat superior for sex discrimination under Pennsylvania common law;
- Count 6, breach of fiduciary duty under Pennsylvania common law;
- Count 7, negligent supervision/hiring under Pennsylvania common law; and
- Count 9, intentional infliction of emotional distress under Pennsylvania common law.

(Doc. No. 22 at 9-10.)  Count 8, alleging a breach of contract, is the only claim against DCCC which survives the statute of limitations bar.  The statute of limitations in Pennsylvania for breach of contract is four years, and Plaintiff filed her initial Complaint within this time period.[12]  See 42 Pa. Cons. Stat. § 5525(a).

### B.  Additional Reasons for Dismissal of Counts Barred by the Statute of Limitations

There are additional reasons, apart from the statute of limitations, why certain claims made against DCCC will be dismissed.  Moreover, there are also reasons why certain claims made against Preston will be dismissed.  A discussion of these reasons follows.

### 1.  Count 1:  Sex Discrimination under the PHRA

---

[11] See Kasteleba, 325 F. App'x. at 156 (noting that federal courts apply a state's personal injury statute of limitation for Section 1983 claims, which is two years in Pennsylvania); Wilson v. Garcia, 471 U.S. 261 (1985) (affirming the use of states' statutes of limitations for torts in Section 1983 cases); Bougher, 882 F.2d at 74 ("[W]e conclude that the most analogous statute of limitations [for a Title IX claim] is Pennsylvania's two-year statute of limitations period applicable to personal injury actions . . . ."); see also 42 Pa. Cons. Stat. § 5524 (setting a two year statute of limitations for personal injury suits in Pennsylvania).

[12] For reasons discussed infra, the statute of limitations would also bar the § 1983 claim of sex discrimination in violation of the Equal Protection Clause against Defendant Preston as alleged in Count 3.

Count 1 of the Second Amended Complaint alleges that Plaintiff was sexually harassed by Preston in violation of the PHRA, and that DCCC was liable for the harassment under a respondeat superior theory.  These claims will be dismissed for failure to exhaust administrative remedies.  Even if Plaintiff had exhausted her administrative remedies, Plaintiff's PHRA claim against DCCC would be dismissed for failure to allege that DCCC had actual knowledge of the actions of Preston.

### a) Failure to Exhaust Administrative Remedies as to Defendants DCCC and Preston

A plaintiff who seeks a judicial remedy for sexual harassment under the PHRA must first file an administrative complaint with the PHRC.  Thush v. Mfr. Res. Ctr., 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002) (citing Woodson v. Scott Paper Co., 109 F. 3d 913, 925 (3d Cir. 1997)).  Under 43 Pa. Cons. Stat. § 962(c)(1), the PHRC has exclusive jurisdiction over claims for a period of one year in order to investigate and, if possible, conciliate the claims.  After the expiration of the one year period, a complainant may bring suit regardless of whether the PHRC issues a right to sue letter.  Thush, 315 F. Supp. at 656.  However, a plaintiff who fails to exhaust administrative remedies with the PHRC is barred from seeking judicial remedies.  Id.

Courts in this district consistently have dismissed PHRA claims filed prior to the expiration of the one year jurisdictional period of PHRC review.  See Lyons v. Springhouse Corp., No. 92-6133, 1993 WL 69515, at *3 (E.D. Pa. Mar. 10, 1993) (dismissing a PHRA claim and holding that the plaintiff, who filed a civil action only six months after having filed charges with the PHRC, had not exhausted his administrative remedies); Nicholls v. Wildon Indus., Inc., No. C.A. 98-6697, 1999 WL 1211656, at *4 (E.D. Pa. Dec.10, 1999) (dismissing a  PHRA claim because the plaintiff failed to wait a full year before filing a writ of summons in the Common Pleas Court).

Plaintiff filed her claim with the PHRC on August 1, 2011.  (Doc. No. 17 at 50.)  The PHRC therefore had exclusive jurisdiction over the claim for one year, or until August 1, 2012. On May 15, 2012, prior to the end of the one year period, Plaintiff voluntarily withdrew her claim.  (Id.)  The initial Complaint was filed in this action on July 10, 2012.  (Doc. No. 22 at 12.) Thus, the instant action was filed prior to the expiration of the one year period when the PHRC would have exclusive jurisdiction.  Since Plaintiff has failed to exhaust her administrative remedies under the PHRA, Count 1, alleging sex discrimination against both Defendants will be dismissed for failure to exhaust administrative remedies.

### b)  Failure to Sufficiently Plead That Defendant DCCC Had Actual Knowledge of Sex Discrimination

Count 1 will also be dismissed against Defendant DCCC because Plaintiff failed to plead sufficiently that DCCC had actual knowledge of the actions of Preston.  Under both Title IX and the PHRA, a public entity can only be liable for damages where they are deliberately indifferent to sexual harassment.  This requires that the public entity have actual knowledge of conduct that is so severe, pervasive, and objectively offensive that it deprived the victim of access to the educational opportunities or benefits of the school.  Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999).  It is not enough to allege that school officials "knew or should have known" of sexual harassment, but rather, one claiming such discrimination must establish actual knowledge on the part of school officials.  Id. at 642; Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 292-93 (2006).

Plaintiff alleges that "[DCCC's] agents, servants, and/or employees in supervisory capacities had constructive and/or actual knowledge that Defendant, Preston, was engaging in inappropriate sexual, harassing, and lewd willful misconduct towards Plaintiff and Defendant,

[DCCC's] other female foreign students."  (Doc. No. 17 at 21.)  Plaintiff fails to plead, however, any facts to support this conclusory allegation.

A review of the e-mails and Facebook messages attached to the Second Amended Complaint does not show that DCCC had knowledge of the harassing conduct.  Plaintiff states that "Preston. . . made inappropriate yet ironic admissions that students at Defendant, DCCC complained to Defendant, DCCC Administrators about Defendant, Preston's conduct while as a professor. . . ."  (Id.)  Plaintiff then quotes an e-mail in which Preston stated that "[t]he main reason [the students] complained is I would not let them talk which was a direct result of [another professor] allowing students to have a free for all in class."  (Id.)  Contrary to the inferences Plaintiff wishes the Court to draw, this e-mail demonstrates that students complained to DCCC about Preston's classroom management, and not about sexual harassment.

Plaintiff also alleges that DCCC had actual knowledge of the harassment because other students witnessed Preston's inappropriate comments.  (Doc. No. 23 at 23; Doc. No. 17 at 15-16.)  To support this allegation, Plaintiff cites various e-mails written by other students.  (Doc. No. 23 at 23; Doc. No. 17 at 15-16.)  None of these writings indicate that students complained to DCCC about sexual harassment.

While a court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them . . . [w]e are not, however, required to accept as true unsupported conclusions and unwarranted inferences."  Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997).  Nor is a court required to accept "a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  Here, the inference that DCCC had actual knowledge of harassment by Preston is not warranted by the facts pled.  The e-mails do not show that DCCC had knowledge of Preston's illicit conduct or

that DCCC was aware of the e-mails sent by Preston from his personal e-mail account.  For this additional reason, Count 1 will be dismissed as to DCCC.

### 2.  Count 2:  Sex Discrimination under Title IX

In Count 2, Plaintiff alleges that DCCC and its administrators or supervisors "had actual and/or constructive notice that Defendant, Preston[,] was engaging in inappropriate sexual, harassing and lewd willful misconduct towards Plaintiff and other female foreign students of Defendant, DCCC," in violation of Title IX.  (Doc. No. 17 at 26.)  As noted previously, Title IX provides that "[n]o person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.  Plaintiff further avers that Preston is liable for his actions in violation of Title IX.  (Doc. No. 17 at 26.)

### a)       As to Defendant DCCC

The Third Circuit has held that a school district cannot be found liable under Title IX unless notice has been provided to an "appropriate person."  Bostic v. Smyrna School Dist., 418 F.3d 355, 360 (3d Cir. 2005).  An "appropriate person" is defined as someone "with the power to take action to correct the discrimination."  Id.  As noted supra, Plaintiff does not assert that she or other students complained to any school official about Preston's harassment.  Thus, Plaintiff has failed to plead sufficient facts to demonstrate that DCCC had actual notice of Preston's harassing conduct.  As such, Count 2 alleging sex discrimination under Title IX against DCCC will be dismissed.

### b)  As to Defendant Preston

With regard to Preston, a plaintiff cannot maintain a Title IX action against an individual. Rather, such actions may only be brought against educational institutions.  Nelson v. Temple

Univ., 920 F. Supp. 633, 638 (E.D. Pa. 1996) (holding that a Title IX action cannot be brought against an individual because only remedies against "private or public entities" are mentioned in Title IX). Thus, Count 2 alleging sex discrimination under Title IX against Defendant Preston will be dismissed.

### 3. Count 3: Sex Discrimination in Violation of the Equal Protection Clause of the 14th Amendment alleged under § 1983

In Count 3, Plaintiff claims her Fourteenth Amendment right to equal protection, filed pursuant to 42 U.S.C. § 1983, was violated.[13] (Id. at 32.)

#### a)      As to Defendant DCCC

Regarding DCCC, Count 3 will be dismissed because it was filed in violation of the two year statute of limitations, as discussed above.

#### b) As to Defendant Preston

To establish a § 1983 claim, Plaintiff must "demonstrate a violation of a right protected by the Constitution . . . that was committed by a person acting under the color of state law." Heister v. Fischer, 113 F.Supp. 742, 746 (E.D. Pa. 2000) (quotations and citations omitted). Defendant Preston was only a state actor for purposes of a violation of the equal protection clause when he was an employee of DCCC, a state entity. Plaintiff's Title IX claim against Preston alleging that he was a state actor is barred by the two year statute of limitations, which began when he was terminated on March 22, 2010. (Doc. No. 3 at 3.) After that date, he was no longer a state actor. Since the original Complaint was filed on July 12, 2010, Count 3 against Preston will be dismissed because it was filed in violation of the two year statute of limitations.

---

[13] Section 1983 does not create an independent cause of action. It provides a means to redress alleged violations of rights secured by the Constitution and laws of the United States. Halstead v. Motorcycle Safety Found. Inc., 71 F. Supp. 2d 464, 472 (E.D. Pa. 1999) ("Section 1983 does not create a cause of action in and of itself; rather it provides redress for certain violations of rights arising under the federal constitution or laws of the United States which are caused by persons acting under color of state law.").

### 4.   Count 4:  Hostile Environment under Pennsylvania Common Law, Title IX, and the PHRA as to Defendants DCCC and Preston

In Count 4, Plaintiff alleges a hostile environment was created by the failure of DCCC to properly train its administrators to prevent sexual harassment from occurring at DCCC.  (Doc. No. 17 at 37-38.)  Plaintiff further alleges that Preston is "jointly and severally liable" for the hostile work environment.  (Id. at 38.)  Plaintiff bases her claim on the Pennsylvania Common Law, Title IX, and the PHRA.

First, a "hostile environment" claim does not appear to be a cognizable cause of action under Pennsylvania common law.  Plaintiff has failed to provide Pennsylvania case law addressing a hostile environment claim under the common law, and the Court could not locate any such cases.  It is apparent that hostile environment claims are properly brought under the PHRA or Title IX.  Therefore, Plaintiff's claim against both named Defendants for creating a hostile work environment in violation of Pennsylvania common law will be dismissed.

To the extent the claim is brought under Title IX, this Court has already addressed this claim in the discussion above on Count 2.  The claim is being dismissed because Plaintiff failed to plead facts showing that DCCC had actual knowledge of Preston's alleged harassing actions.  Moreover, Title IX action cannot be maintained against an individual, and therefore Count 4 against Preston will be dismissed.  See Nelson, 920 F. Supp. at 638.

To the extent Plaintiff is also asserting a hostile environment claim in violation of the PHRA, it too will be dismissed against both Defendants for failure to exhaust administrative remedies, as discussed above.

### 5.   Count 5:  Vicarious Liability, Respondeat Superior as to Defendants DCCC and Preston

Count 5 of the Second Amended Complaint alleges a cause of action for Vicarious Liability/Respondeat Superior under Pennsylvania law.  Respondeat Superior is not a separate

16

cause of action, but rather a method to impute liability to a principal for the actions of an agent.

See e.g., Care v. Reading Hosp. & Med. Ctr., No. 2003-CV-04121, 2004 WL 728532, at *12

(E.D. Pa. Mar. 31, 2004) ("[R]espondeat superior does not constitute a separate cause of action . .

. .").  In the instant case, Plaintiff has alleged respondeat superior as a separate cause of action.

Because respondeat superior is not a separate cause of action, Count 5 will be dismissed against

both Defendants.

### 6.  Count 6:  Breach of Fiduciary Duty

In Count 6, Plaintiff claims that both DCCC and Preston owed her a fiduciary duty.

(Doc. No. 17 at 43.)  Plaintiff alleges that DCCC owed Plaintiff a fiduciary duty when she

enrolled as a student and breached its duty by failing to create an environment in which she

could pursue an education free from sexual harassment.  (Id. at 44.)  Plaintiff also avers that

Preston breached his fiduciary duty as a professor by harassing her as noted above.  (Id. at 43.)

As more fully explained below, Count 6 against both Defendants will be dismissed.

### a)  Existence of a Fiduciary Duty

A fiduciary relationship arises when a person has a duty to act for or give advice for the

benefit of another person on matters within the scope of their relationship.  Restatement (Second)

of Torts, § 874 cmt. a (1979).  Under Pennsylvania law, "[a fiduciary] relationship exists where

one person has reposed a special confidence in another to the extent that the parties do not deal

with each other on equal terms, either because of an overmastering dominance on one side or

weakness, dependence or justifiable trust, on the other."  Commw. Dept. of Transp. v. E-Z Parks,

Inc., 620 A.2d 712, 717 (Pa. Commw. Ct. 1993).

In Pennsylvania, to state a claim for breach of fiduciary duty, a plaintiff must allege that:

"(1) the defendant acted negligently or intentionally failed to act in good faith and solely for the

benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff

suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a

real factor in bringing about plaintiff's injuries." McDermott v. Party City Corp., 11 F. Supp. 2d

612, 626 n.18 (E.D. Pa. 1998).

In Manning v. Temple University, the court described the law in Pennsylvania on the

existence of a fiduciary relationship between a professor and student:

> Pennsylvania law holds that a per se fiduciary relationship exists between trustee
> and beneficiary, guardian and ward, attorney and client, and principal and agent. It
> also recognizes that the facts and circumstances in other situations may give rise
> to such a relationship. However, the parties have not called to our attention any
> Pennsylvania case which has ruled that a graduate school or its professors owe
> any fiduciary duties to graduate students.

No. 03-4012, 2004 WL 3019230, at *10 (E.D. Pa. Dec. 30, 2004), aff'd, 157 F. App'x. 509 (3d

Cir. 2005).   In a more recent decision discussing Manning, a court held "that university

personnel do not owe a fiduciary duty to students under Pennsylvania law." Vurimindi v. Fuqua

Sch. of Bus., No. 10-234, 2010 WL 3419568, at *7 (E.D. Pa. Aug. 25, 2010) (quoting

explanatory parenthetical following citation to Manning).   In yet another decision, a court held,

however, that a special education teacher owed a fiduciary duty to his autistic minor student

because he was in an overmastering position.  Vicky M. v. Ne. Educ. Intermediate Unit, 486

F.Supp. 437, 459 (M.D. Pa. 2007).

### i.   As to Defendant Preston

As Plaintiff's professor, Preston was responsible for preparing her for the TOEFL

examination.  She assumed Preston would help her learn the English language at a level that

would allow her to pass the TOEFL.  DCCC hired Preston to teach the TOEFL class, and

Plaintiff justifiably relied on Preston to help her prepare for the TOEFL.  In this situation, it is

possible that a fiduciary relationship existed between Preston and Plaintiff.  Assuming arguendo

that such a relationship existed, this duty ended when Plaintiff completed the TOEFL class in August 2008.  Since the initial Complaint was filed on July 10, 2012, even if the fiduciary claim was a viable one, it is barred by Pennsylvania's two year statute of limitations.

### ii.    As to Defendant DCCC

To date, Pennsylvania courts have not spoken on the issue of whether a college owes a fiduciary duty to its enrolled students.  DCCC has cited two cases outside Pennsylvania holding that a fiduciary relationship does not exist between a student and a university.  See Morris v. Brandeis Univ., No. CA002161, 2001 WL 1470357, at *6 (Mass. Super. Ct. Sep. 4, 2001) (the relationship between students and universities is contractual rather than fiduciary); Zumbrun v. Univ. of S. Cal., 25 Cal. App. 3d 1, 13 (1972) (same).  Neither case dealt with a teacher sexually harassing a student.

On the other hand, Plaintiff cites a New Hampshire case in which a fiduciary relationship was found to exist between a student and a public university.  See Schneider v. Plymouth State DCCC, 744 A.2d 101, 105-06 (N.H. 1999).  In Schneider, the court stated that "[i]n the context of sexual harassment by faculty members, the relationship between a post-secondary institution and its students is a fiduciary one."  Id. at 105.  The court reasoned that, "the power differential between faculty and students . . . makes it difficult for [students] to refuse unwelcome advances and also provides the basis for negative sanctions against those who do refuse."  Id. (citing Bogart & Stein, Breaking the Silence: Sexual Harassment in Education, 64 Peabody J. Educ. 146, 157 (1987); cf. M. Paludi, Sexual Harassment on College Campuses: Abusing the Ivory Power 85-87 (1990) (discussing student-professor power differential and role in sexual harassment)).  In Schneider, the court concluded:

> When the plaintiff enrolled at [the college], she became dependent on the defendants for her education, thereby requiring them "to act in good faith and with due regard" for her interests.  Lash, 124 N.H. at 439, 474 A.2d at 982.  The

relationship between students and those that teach them is built on a professional relationship of trust and deference, rarely seen outside the academic community. As a result, we conclude that this relationship gives rise to a fiduciary duty on behalf of the defendants to create an environment in which the plaintiff could pursue her education free from sexual harassment by faculty members.

744 A.2d at 105-106.

Courts have disagreed with the holding in <u>Schneider</u>.  <u>See</u> <u>Valente v. Univ. of Dayton</u>, 438 F. App'x. 381, 387 (6th Cir. 2011) (discussing <u>Schneider</u> and finding that under Ohio law, no fiduciary relationship exists between a university and its students); <u>Leary v. Wesleyan Univ.</u>, No. CV055003943, 2009 WL 865679, at *12 (Conn. Super. Ct. Mar. 10, 2009) (declining to find a fiduciary relationship between a university and student who complained to school safety officers of a panic attack and later committed suicide).

Although courts have reached different results about the existence of a fiduciary duty to an enrolled student by a university, and this issue is unresolved in Pennsylvania, this Court need not decide if a fiduciary duty exists because, as with the claim against Preston, the alleged breach of such duty is time-barred under the statute of limitations.  Moreover, DCCC has immunity on this claim under the Political Subdivision Tort Claims Act, as discussed below.

**b)  Immunity Under the Tort Claims Act as to Defendant DCCC**

The Political Subdivision Tort Claims Act (the "Tort Claims Act") provides that:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person.

42 Pa. Cons. Stat. § 8541.  A community college is a local agency covered by governmental immunity under the Tort Claims Act.  <u>Cmty. Coll. of Allegheny Cnty. v. Seibert</u>, 601 A.2d 1348, 1352 (Pa. Commw. Ct. 1992), <u>aff'd</u>, 622 A.2d 285 (Pa. 1993).  Under this Act, for Plaintiff to hold DCCC liable in tort, Plaintiff must show that her injury was caused by the negligent acts of

DCCC or its employee acting within the scope of their office or duties, and that the negligent acts fall within one of eight exceptions to immunity found in 42 Pa. Cons. Stat. § 8542(b).  See Mascaro v. Youth Study Ctr., 523 A.2d 1118, 1120 (Pa. 1987).  The exceptions are:

> (1) the operation of a motor vehicle; (2) the care, custody or control of personal property; (3) the care, custody or control of real property; (4) a dangerous condition of trees, traffic signs, or other traffic controls; (5) a dangerous condition of utility service facility; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of certain animals.

42 Pa. Cons. Stat. § 8542(b).

In this case, none of the acts of Preston that Plaintiff attempts to impute to DCCC fall within the eight exceptions to immunity under the Tort Claims Act.  Rather, Plaintiff avers that DCCC violated a fiduciary duty by failing to provide an environment where Plaintiff could pursue an education free of sexual harassment.  Since this alleged violation is not within the eight enumerated exceptions, the Tort Claims Act bars suit in this case against DCCC on the theory of breach of a fiduciary duty.  See e.g., Sewickley Twp. Volunteer Fire Co. No. 3 v. First Nat'l Bank, 8 Pa. D. & C.4th 297 (Pa. Ct. Com. Pl. 1990) (dismissing a fiduciary duty claim because it did not fall within the enumerated exceptions); Vicky M. v. Ne. Educ. Intermediate Unit 19, 486 F. Supp. 2d 437, 459-60 (M.D. Pa. 2007) (same).  Accordingly, since DCCC has immunity under the Tort Claims Act, the claim made in Count 6 against DCCC will be dismissed.

### 7.  Count 7:  Negligent Hiring and Supervision

#### a)  As to Defendant DCCC

In Count 7, Plaintiff alleges that DCCC is responsible for the "negligent and careless hiring, retention, or lack of supervision" of Preston, and that Preston is jointly and severally liable for his own negligent hiring.  (Doc. No. 17 at 50-51.)  Count 7 against DCCC will be dismissed because DCCC has immunity under the Political Subdivision Tort Claims Act, as

discussed above.  See e.g., Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495 (E.D. Pa. 2004)

(dismissing negligent hiring action because it did not fall within the enumerated exception); Erb

v. Greenmount Comm. Fire Co., Inc., 63 Pa. D. & C.4th 353 (Pa. Ct. Com. Pl. 2003); and Moles

v. Borough of Norristown, 780 A.2d 787 (Pa. Commw. Ct. 2001) (same).

Even though DCCC is cloaked with immunity under the Act, a review of the claim made

in Count 7 on the merits would produce the same result.  Under Pennsylvania law, an employer

is subject to liability for harm resulting from its conduct if it is negligent or reckless "in the

employment of improper persons or instrumentalities in work involving risk of harm to others;

. . . in the supervision of activity; or . . . in permitting, or failure to prevent, negligent or other

tortious conduct by persons, whether or not his servants or agents, upon premises or with

instrumentalities under his control."  Doe v. Schneider, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009)

(citing R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. Ct. 2000)).

Furthermore, an employer may be liable for negligent supervision of an employee where:

> the employer fails to exercise ordinary care to prevent an intentional harm to a
> third-party which 1) is committed on the employer's premises by an employee
> acting outside the scope of his employment and 2) is reasonably foreseeable.

Mullen v. Topper's Salon and Health Spa, Inc., 99 F. Supp. 2d 553, 556 (E.D. Pa. 2000) (citing

Dempsey v. Walso Bureau, 246 A.2d 418, 419-22 (Pa. 1968)).

Once an employee informs an employer of harassment by another employee, the

persistence of that harm becomes reasonably foreseeable.  Id. at 556-57 (citing Mandy v. Minn.

Mining and Mfg., 940 F. Supp. 1463, 1471 (D. Minn. 1996) (stating that under the Restatement

(Second) of Torts § 317, after it was reported, continued harassment of plaintiff was foreseeable,

and defendant had duty to protect against it)).  In Mullen, the court found that because the

plaintiff pled that she informed her employer about alleged harassment, that harassment was

reasonably foreseeable.  Id. at 557.  The court held that the plaintiff sufficiently pled facts to survive a motion to dismiss.  Id. at 557.

Here, Plaintiff has failed to plead any facts indicating that she, or any other student, complained about Preston's actions to an appropriate administrator.  Plaintiff's lone allegation in the Second Amended Complaint that DCCC had knowledge of any misconduct by Preston is that Preston allegedly admitted that students complained about him.  (Doc. No. 17 at 12-13.) However, a review of the e-mails from students cited in support of this allegation shows that the complaints related to Preston's classroom management, such as Preston prohibiting the students from talking to each other during class.  Id.  There is no indication that the complaints were related to sexual harassment or discrimination, or that any of the complaints were made by, or referenced, Plaintiff.  Thus, despite filing a Second Amended Complaint, Plaintiff has failed to plead facts satisfying the "reasonably foreseeable" element of a negligent supervision claim. Therefore, Count 7 against DCCC will be dismissed.

**b)  As to Defendant Preston**

To the extent Plaintiff is bringing a negligent supervision claim against Preston, there are no allegations in the Second Amended Complaint that Preston at any time hired or supervised anyone employed by Preston or DCCC who engaged in offensive conduct.  Thus, Count 7 will be dismissed as to Preston.

**8.  Count 8:  Breach of Contract under Common Law**

**a)   As to Defendant DCCC**

Plaintiff alleges in Count 8 that DCCC breached a contract with her as found in DCCC's Nondiscrimination and Harassment/Sexual Harassment Policy (the "Harassment Policy").  (Doc. No. 17 at 56.)  Plaintiff claims that the Harassment Policy constitutes part of an implied contract

that came into effect when Plaintiff enrolled at DCCC.  (Id. at 55-56.)  Plaintiff further avers that

terms of the implied contract were contained in "DCCC's college catalogs, bulletins, circulars,

and regulations made available to Plaintiff . . . ."  (Id.)  Plaintiff argues that under the implied

contract, she agreed to pay tuition and complete educational course requirements, and in turn,

DCCC would grant her an associate's degree.  (Id. at 55.)  She next alleges that DCCC violated

the Harassment Policy, and thereby breached the terms of the implied contract, by not providing

a learning environment free from discrimination and not encouraging faculty or students to

"bring questions about sexual harassment or discrimination to the attention of [Defendant

DCCC]."  (Id. at 56-57.)

   To sustain a claim for breach of contract, a plaintiff must prove: "(1) the existence of a

contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3)

resultant damages."  CoreStates Bank, Nat'l Ass'n v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super.

Ct. 1999).  DCCC cites Manning v. Temple University for the proposition that courts do not hold

student handbooks to be contracts.  2004 WL 3019230 at *12.  In Manning, the student

handbook in question stated that "[t]he rules, regulations, and information provided in this

handbook are announcements only and in no way serve as a contract between the student and

Temple University."  Id.  The court held that because the handbook specifically stated that it was

not a contract, Plaintiff could not prove that a contract existed.  Id.

   Here, there is no assertion by any party that the DCCC student handbook contains a

provision similar to the handbook provision relied upon by the Plaintiff in Manning.  In fact, one

court in Pennsylvania has held that student catalogues, bulletins, circulars and regulations can

become part of a contract:

> Our courts have been reluctant to recognize claims of educational malpractice in
> the academic environment but they have recognized that a contract exists between

a student and a college. **The courts have held that in general, the basic relationship between a student and a private university or college is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant become part of the contract. Questions of discipline, academic matters, and tuition and scholarship disputes have been addressed by courts and resolved on contract principles.** At the same time, however, courts have been reluctant to apply strict contract concepts to the unique relationship that exists between students and universities or colleges.

Barr v. Cmty. Coll. of Beaver Cnty., 968 A.2d 235, 238 (Pa. Cmmw. Ct. 2009) (emphasis in original).  Plaintiff essentially bases her breach of contract claim on the Harassment Policy, which may fall under one or more of the categories of documents that can create a contact between a student and a school.  Because Plaintiff has plausibly pled in Count 8 the existence of a contract, a breach by DCCC of a duty imposed by the contract and resultant damages, this Count will not be dismissed.

### b)  As to Defendant Preston

Plaintiff also brings an action for breach of contract against Preston.  There are no allegations in the Second Amended Complaint that Preston and Plaintiff entered into a contract at any time.  Thus, Count 8 against Preston will be dismissed for failure to state a claim upon which relief can be granted.

### 9.  Count 9:  Intentional Infliction of Emotional Distress as to Defendants DCCC and Preston

In Count 9, Plaintiff claims that Preston's harassing actions caused Plaintiff severe emotional distress.  (Doc. No. 17 at 62-63.)  Plaintiff further alleges that DCCC is jointly and severally liable for allowing the infliction of emotional distress on Plaintiff.  (Id. at 63.)

### a)   As to Defendant DCCC

Plaintiff's claim against DCCC of Intentional Infliction of Emotional Distress ("IIED") will be dismissed because DCCC has immunity under the Political Subdivision Tort Claims Act, as discussed supra.[14]

In any event, a review of the merits of the claim made in Count 9 would not yield a different result.  "For a plaintiff to recover on an intentional infliction of emotional distress claim, '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  Imboden v. Chowns Commc'ns, 182 F. Supp. 2d 453 (E.D. Pa. 2002) (quoting Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988)).

Here, Plaintiff alleges that Preston sexually harassed her and that DCCC allowed the harassment to occur.  (Doc. No. 17 at 61.)  However, even if these allegations were true, Imboden holds that such actions would not reach the level of IIED:

> [A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress. Andrews v. City of Phila., 895 F.2d 1469, 1487 (3d Cir. 1990). The extra factor that is generally required is retaliation for turning down sexual propositions. Offensive comments and gestures in the workplace, even though sexually explicit, are not enough to satisfy the Andrews extra requirement of sexual propositions. Andrews requires that a Plaintiff allege retaliation based on a rejection of sexual advances or propositions.

Imboden, 182 F. Supp. 2d at 458.  Thus, DCCC is only responsible for Preston's alleged harassment if it is found responsible for Preston's conduct and that his conduct rose to the level of outrageousness.  Plaintiff has not alleged retaliation by DCCC or Preston based on a rejection

---

[14] Courts in this district have previously dismissed IIED claims under the Tort Claims Act.  See e.g., Lakits v. York, 258 F. Supp. 2d 401 (E.D. Pa. 2003); Thompson v. Wynnewood of Lower Merion Twp., No. 12-2308, 2012 WL 4033706 (E.D. Pa. Sept. 13, 2012) (Slomsky, J.).

of sexual advances or propositions.  Therefore, Plaintiff's IIED claim against DCCC will be dismissed for failure to state a claim upon which relief can be granted.

### b)  As to Defendant Preston

For the same reasons as those discussed above with respect to the merits of Count 9, Plaintiff's IIED claim against Preston will be dismissed for failure to state a claim upon which relief can be granted.

### C.  Remand

Pursuant to 28 U.S.C. § 1331, this Court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  On August 10, 2012, this case was removed from the Court of Common Pleas of Delaware County under federal question jurisdiction.  (Doc. No. 1.)  Counts 2, 3, and 4 were the basis of federal jurisdiction. These Counts will now be dismissed for the reasons set forth above.  The only claim which remains in this case is Count 8, a state law breach of contract claim against DCCC.

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Here, the Court declines to exercise supplemental jurisdiction over the remaining state law breach of contract claim.  Accordingly, this case will be remanded to the Court of Common Pleas of Delaware County for further adjudication on this claim.

## V.   CONCLUSION

For the above stated reasons, DCCC's Motion to Dismiss the Second Amended Complaint will be granted in part and denied in part, and Preston's Motion to Dismiss the Second Amended Complaint will be granted in its entirety.  The remaining claim of breach of contract against DCCC in Count 8 will be remanded to state court.  An appropriate Order follows.